J. S41017/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
    :    PENNSYLVANIA
    :
v.    :
    :
BREON LAWRENCE,    :
    :
Appellant    :    No. 3051 EDA 2015

Appeal from the Judgement of Sentence September 11, 2015
In the Court of Common Pleas of Delaware County
Criminal Division No.: CP-23-CR-0005326-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:        **FILED June 24, 2016**

Appellant, Breon Lawrence, appeals from the Judgment of Sentence entered by the Delaware County Court of Common Pleas following his conviction by a jury of First-Degree Murder and related offenses. After careful review, we affirm on the basis of the trial court's Opinion.

We adopt the facts as set forth in detail by the trial court. ***See*** Trial Court Opinion, filed 1/13/16, at 1-9. In summary, Appellant had a disagreement with the occupants of a vehicle and fired a silver gun into the vehicle, hitting both Jabri Green and Jahkil Swain. Swain died as a result of the shooting. Multiple witnesses identified Appellant as the shooter and police officers recovered the murder weapon from Appellant's bedroom.

---

[*] Former Justice specially assigned to the Superior Court.

After waiving his **Miranda**[1] rights, Appellant provided a statement to police denying any involvement in the shooting, stating that he was with his son and his grandmother at the time of the shooting.

Prior to trial, Appellant stipulated that he was a Person Not To Possess Firearms. A jury convicted Appellant, and the trial court sentenced him accordingly.

Appellant filed a Notice of Appeal on October 8, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues for this Court's review:

1. Was the evidence presented at the time of trial sufficient to convict the [Appellant] of the charges of First[-]Degree Murder, Recklessly Endangering Another Person, Possessing an Instrument of Crime[,] and Person Not To Possess A Firearm?

2. Was the trial court in error in denying [Appellant]'s pre[-]trial Motion as to suppression of statements given by the [Appellant] to law enforcement authorities?

Appellant's Brief at 4 (capitalization omitted).

Appellant first challenges the sufficiency of the evidence. We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. **Commonwealth v. Melvin**, 103 A.3d 1, 39-40 (Pa. Super. 2014). Further, a conviction may be

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. ***Id***. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. ***Id***.

It is well-established that "[t]o sustain a conviction for murder of the first degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and intent to kill." 18 Pa.C.S. § 2502(a); ***Commonwealth v. Hitcho***, 123 A.3d 731, 746 (Pa. 2015). "Section 2502 of the Crimes Code defines murder of the first degree as an 'intentional killing,'" which, in turn, is defined as "a … willful, deliberate and premeditated killing.'" 18 Pa.C.S. § 2502(a)-(d); ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). "[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact[,] the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." ***Hitcho***, ***supra*** at 746.

A person is guilty of Recklessly Endangering Another Person and "commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

A person is guilty of Possession of an Instrument of Crime "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). The statute defines instrument of crime as "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d)(2).

Section 6105, Persons Not to Possess Firearms provides, in relevant part, that "[a] person who has been convicted of an offense enumerated in subsection (b) … shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1), (b).

The Honorable James F. Nilon, Jr., sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's claims on appeal. After a careful review of the parties' briefs and the certified record, we affirm on the basis of the trial court's Opinion. **See** Trial Court Opinion, filed 1/13/16, at 10-17.

Appellant next challenges the denial of his Motion to Suppress his statements. Our standard of review in an appeal from an order denying a Motion to Suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are

correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. ***See*** Trial Court Opinion, filed 1/13/16, at 17, Exhibit A[2] (concluding it properly denied Appellant's Motion to Suppress his statements to police because Appellant knowingly, intelligently, and voluntarily waived his ***Miranda*** rights as demonstrated through the written waiver and testimony from detectives about the circumstances of the statement and waiver).

---

[2] The trial court incorporated and attached its earlier Order and Opinion denying Appellant's Motion to Suppress filed on July 29, 2015.

The parties are instructed to attach a copy of the trial court's Opinion to all future filings.

Judgment of Sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2016

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

v.

BREON LAWRENCE

3051 EDA 2015

CP-23-CR-5326-2014
CP-23-CR-5705-2014

Christopher DiRosato, Esquire; Assistant District Attorney for the Commonwealth
Scott Galloway, Esquire; Attorney for the Appellant

## OPINION

NILON, J.                                                      FILED: 01/13/16

Breon Lawrence, hereinafter "Appellant," challenges his convictions for Murder in the First Degree[1], Recklessly Endangering Another Person[2], Possession of an Instrument of Crime[3], and Persons Not to Possess a Firearm[4] by contesting the sufficiency of the evidence for each of the charges. Additionally, Appellant argues that the Court erred in denying his pretrial Motion to Suppress statements given by Appellant to law enforcement authorities. Appellant's contentions are meritless.

**FACTUAL HISTORY:**

On April 11, 2014, Donald Womack was walking to Crosby Square Apartments in the City of Chester to meet his friend, Breon Lawrence-Appellant. (N.T. 8/5/2015 p. 50). While Womack was walking to the Apartments, he received a phone call from another friend, Jahkil Swain. Swain said he would pick up Womack and drive him to the Crosby Square Apartments. The two agreed to meet at Potter Street in Chester, Delaware County, Pennsylvania. (N.T.

---

[1] 18 Pa.C.S. § 2502
[2] 18 Pa.C.S. § 2705
[3] 18 Pa.C.S. § 907
[4] 18 Pa.C.S. § 6105. (This charge was tried separately.)

8/5/2015 pp. 51-52). Five minutes later, Swain arrived on Potter Street. (N.T. 8/5/2015 p. 52). The vehicle was Swain's mother's vehicle, a Dodge Avenger. Jabri Green was the driver, Swain was seated in the front passenger seat and Dondre Ellis was a backseat passenger on the driver's side. (N.T. 8/5/2015 pp. 52-53). Womack got into the vehicle in the backseat behind the passenger, Swain. Jabri Green drove them to Crosby Square Apartments to meet with Appellant. (N.T. 8/5/2015 p. 54).

When Womack arrived at Crosby Square Apartments, specifically Crosby Street between 13th and 14th Streets, Appellant was in the street riding a bike. (N.T. 8/5/2015 pp. 56, 256). Jabri Green stopped the vehicle and Womack got out to speak with Appellant. (N.T. 8/5/2015 p. 56). However, Womack testified that Appellant's "attention wasn't on [Womack]." (N.T. 8/5/2015 p. 56). Instead of talking to Womack, Appellant leaned into the driver's window and asked Swain if it was "beef" or if it was "squashed." (N.T. 8/5/2015 pp. 56-57). The witness explained that the word "beef" in Chester, PA means: "[p]roblems, they both had problems with each other." ... "Q. What does the word squashed mean to you coming from the City of Chester? A. Let--let--I guess let's be friends again, let's not beef no more." "[L]et bygones be bygones." (N.T. 8/5/2015 p. 56, p.60).

Appellant asked Swain this same question ten times in a demeanor that "wasn't friendly" but Swain did not respond. (N.T. 8/5/2015 pp. 61, 62). Womack attempted to intervene by insisting that it was "squashed" because they were all friends. (N.T. 8/5/2015 p. 61). However, Appellant claimed that it had nothing to do with Womack and continued to ask Swain if it was "beef" or "squashed." (N.T. 8/5/2015 p. 61). Swain eventually replied by reminding Appellant that he tried to spit on Swain. (N.T. 8/5/2015 p. 61). Appellant responded by saying, "[Y]ou . . . told me to suck your dick." (N.T. 8/5/2015 p. 61). Shortly thereafter, Appellant asked Swain if

2

he wanted to fight but Swain said that he did not fight. (N.T. 8/5/2015 p. 62). Appellant then asked Swain, "What you think you can't die? . . . I just want to know if it's beef or if it's squashed." (N.T. 8/6/2015 pp. 62-63). Swain finally answered by saying, "It's whatever." (N.T. 8/5/2015 p. 63).

After hearing that answer, Appellant "gave a look" by shutting his eyes and rolling his head from side to side. (N.T. 8/5/2015 p. 63). Then, Appellant "pulled out the gun, a silver gun from his waist and he ran around the front of the car and he take aim and shot." (N.T. 8/5/2015 pp. 63, 64). Womack told Appellant to "chill" but Appellant brought the gun up chest-high or shoulder-high instead and held it in that position for "about three seconds" before shooting Swain. (N.T. 8/6/2015 p. 65). As Womack testified, Appellant "took aim and shot him." (N.T. 8/5/2015 p. 65).

After the shot was fired, Green felt tingling in his right thigh and noticed that it was bleeding as a result of being shot. (N.T. 8/5/2015 pp. 205, 219, 220, 222). Green put the car in reverse and drove to Crozer Hospital with Swain. (N.T. 8/5/2015 pp. 67, 204-05). Swain entered Crozer Hospital at approximately 2:32 in the afternoon and was pronounced dead approximately eight minutes later at 2:40 in the afternoon. (N.T. 8/5/2015 p. 175). After conducting an autopsy on April 14, 2014, Dr. Frederic Hellman, the Chief Medical Examiner of Delaware County, determined that the cause of death was a single penetrating gunshot wound to the trunk and ruled the manner of death a homicide. (N.T. 8/5/2015 pp. 161, 172, 187).

On the afternoon of the shooting, the Chester Police Department, including Officers Robert Weigand and Frank Myers, responded to the Crozer Chester Medical Center for a report of two subjects in a vehicle that were shot. (N.T. 8/5/2015 pp. 255-56). When Officer Weigand arrived at Crozer Hospital, he noticed a Black Dodge Avenger parked in front of the Emergency

3

Room. The Officer testified that: "Officer Myers had directed me to the passenger side of the vehicle where there was a hole from a projectile in the glass window." (N.T. 8/5/2015 pp. 256-57). In addition, the casing from the projectile was found on the floor of the vehicle. (N.T. 8/5/2015 p. 257).

Detective Adam Sendek, a law enforcement officer with the Delaware County Criminal Investigation Division for fifteen years, was assigned to investigate this case along with Detective James Nolan from the Chester Police Department. (N.T. 8/6/2015 pp. 46, 47). Det. Sendek had been assigned to the homicide unit for almost three years. (N.T. 8/6/2015 p. 46). Det. Sendek testified at the Trial on August 6, 2015 that he conducted witness interviews which led him to develop Appellant as a suspect. (N.T. 8/6/2015 pp. 35, 48, 52).

Specifically, on April 11, 2014, Det. Sendek obtained a recorded statement from Green in the hospital during which Green said that he was driving in the area of the basketball courts by Crosby Square when he "heard a gunshot[,] . . . [saw] a hole, . . . [and Swain said] he got hit." (N.T. 8/5/2015 pp. 217-227). Green insisted that he did not see anyone around when he heard the gunshot. (N.T. 8/5/2015 p. 222). However, on April 15, 2014, Det. Sendek conducted a phone intercept between Green and Lenora Rodriguez, Swain's mother, during which Green explained that Appellant shot and killed Swain. (N.T. 8/5/2015 pp. 289, 291). Also on this date, Detective Michael Jay, assisting Det. Sendek, took a recorded statement from Ellis who described how Appellant shot and killed Swain. (N.T. 8/5/2015 p. 242 & 8/6/2015 p. 36). Additionally, Ellis reviewed a photo array on this date and identified Appellant as the actor who killed Swain. (N.T. 8/6/2015 pp. 38-39, 40).

On April 26, 2014, Womack went to the Chester Police Department and provided a recorded statement recounting the events that took place leading up to and following Appellant

4

killing Swain. (N.T. 8/5/2015 pp. 89-90, 134). While at the police department, Womack also looked at a photo array to identify the person who shot Swain and identified Appellant. (N.T. 8/5/2015 pp. 90, 92). The account of events provided by Green in the phone intercept, Ellis in his recorded statement, and Womack in his recorded statement were generally consistent with each other.

As a result of this information, Det. Sendek issued an arrest warrant for Appellant. (N.T. 8/6/2015 p. 55). Det. Sendek approached Corporal James Mullen, a member of the U.S. Marshals Violent Offenders Fugitive Task Force, regarding the execution of Appellant's arrest warrant. (N.T. 8/5/2015 pp. 268-69). Cpl. Mullen learned of Appellant's location at 1026 Church Street in Upland Borough Delaware County, PA and, on April 29, 2014, went to the residence with other Deputy Marshals to execute the arrest warrant. (N.T. 8/5/2015 p. 269). After receiving consent from one of the tenants, who also specified that Appellant would be in a bedroom downstairs to the right, entry was made into the residence. (N.T. 8/5/2015 pp. 273, 274). However, Appellant was not found inside the residence. (N.T. 8/5/2015 pp. 274, 275). Appellant had jumped out of the second-floor window onto the roof in the rear of the home but was ultimately apprehended and taken into custody by the U.S. Marshals. (N.T. 8/5/2015 pp. 274, 275). After receiving further consent from one of the tenants, a .357 Taurus revolver was found sticking out of a men's work boot on the floor of the bedroom in which Appellant was residing. (N.T. 8/5/2015 pp. 277, 278).

Appellant was ultimately brought to the Chester Police Department Headquarters. (N.T. 8/6/2015 p. 56). On April 29, 2014 at 6:20 p.m., Detective Sendek and Detective Randy Bothwell interviewed Appellant. (N.T. 8/6/2015 pp. 57, 60). Det. Sendek informed Appellant that he was under arrest for the murder of Jahkil Swain. (N.T. 8/6/2015 pp. 63-64). Det. Sendek

5

read Appellant his *Miranda* rights but Appellant did not invoke them. (N.T. 8/6/2015 pp. 58, 61-63). Appellant provided a recorded statement on April 29, 2014 in which he stated that, at the time he heard the gunshot, he was outside the Crosby Square Apartments with his son, "running in and out of his grandmom's house." (N.T. 8/6/2015 pp. 66, 71). Additionally, he stated that he purchased the silver handgun that was found in his bedroom *after* the date on which Swain was killed. (N.T. 8/6/2015 p. 71). During his statement, Appellant never admitted any involvement in the murder of Swain. (N.T. 8/6/2015 p. 71).

In April of 2014, Detective Louis Grandizio performed a ballistics examination on the Taurus Model 60 .357 Magnum revolver that was found at Appellant's residence after he was arrested. (N.T. 8/6/2015 p. 22). He compared the test-fire and the bullet jacket from the scene and determined that "the copper bullet jacket recovered by Chester Police was fired from the revolver." (N.T. 8/6/2015 pp. 30, 32).

Appellant's first witness was Marta Roberts, Appellant's grandmother. (N.T. 8/6/2015 p. 92). Roberts testified that, on April 11, 2014, she saw Appellant "outside the cluster" in Crosby Square Apartments at the time she heard the gunshot. (N.T. 8/6/2015 pp. 92, 95). However, she then testified that she saw Appellant leave the apartment but did not actually see him outside the apartment because she did not go out. (N.T. 8/6/2015 pp. 96-97). Then Appellant called Shakia Johnson, Appellant's aunt, to testify. (N.T. 8/6/2015 pp. 107, 108). Johnson testified that, at the time she heard the gunshot on April 11, 2014, she saw Appellant "right outside the door inside the apartment complex cluster" waiting for a ride. (N.T. 8/6/2015 p. 111).

Following the jury trial, a non-jury trial was held on August 6, 2015 for the Court to decide whether the elements of Count 6, Persons Not to Possess a Firearm, had been met. (N.T. 8/6/2015 pp. 241-42). A stipulation was entered at the non-jury trial as follows:

6

If called to testify, Mr. Michael Castagna, of the Delaware County Office of Adult Probation & Parole Services, is an agent for that Department currently supervising the [Appellant], Breon Lawrence, for a conviction of Possession with the Intent to Deliver a Controlled Substance, an ungraded felony, and on November 5th of 2012, Mr. Lawrence was convicted before Judge Kelly of Possession with the Intent to Delivery [sic], an ungraded felony, that being cocaine, Schedule II, and received a sentence of 11 ½ to 23 months of incarceration and is currently still supervising Mr. Lawrence. If called to testify, he would identify the [Appellant] as Mr. Lawrence who he is supervising and that, therefore, the evidence presented by the Court would -- the ungraded felony would meet one of the enumerated offenses under Section 6105.

(N.T. 8/6/2015 pp. 242-43). Additionally, a copy of Delaware County Court of Common Pleas, Certificate of Imposition of Judgment of Sentence signed by Judge Kelly on November 5, 2012 at docket no. 3766-2012 was admitted into evidence. (N.T. 8/6/2015 p. 243). The judgment of sentence was evidence that the Appellant entered into a negotiated guilty plea to Possession with the Intent to Deliver a Controlled Substance-Cocaine, an ungraded felony.

On August 6, 2015, following a jury trial, the Appellant was convicted, at docket 5326-2014, of First-Degree Murder, Recklessly Endangering Another Person, Possessing an Instrument of Crime[5]. In the related nonjury matter, the court found the Appellant guilty of Persons not to Possess a Firearm[6]. At docket 5705 – 2014, the jury convicted the Appellant of Possession of a Firearm with Manufacturer's Number Altered and Possession of a Controlled Substance[7]. In the related nonjury matter, the court also found the Appellant guilty of Persons Not to Possess a Firearm.

**PROCEDURAL HISTORY:**

This is an appeal from the Court's Judgment of Sentence imposed on September 11, 2015. Appellant, Breon Lawrence, was arrested and charged with *inter alia* Murder in the First

---

[5] 18 Pa.C.S. §§2502(a), 2705, and 907, respectively.
[6] 18 Pa.C.S. §6105.
[7] 18 Pa.C.S. §6110.2 and 35 P.S. §780-113 (a)(16).

7

Degree[8], Recklessly Endangering Another Person[9], Possession of an Instrument of Crime[10], and Persons Not to Possess a Firearm[11]. On August 18, 2014, a Preliminary Hearing was held wherein District Justice Wilden H. Davis held Appellant for Court on all charges. At the P Preliminary Hearing, Appellant was represented by Shaka Johnson, Esquire.

On September 17, 2014, Appellant was formally arraigned. The Office of the Public Defender filed a petition to appoint counsel due to a conflict of interest on November 6, 2014. On November 12, 2014, the Court appointed Scott Galloway, Esquire to represent Appellant. On December 16, 2014, Appellant filed an "Omnibus Pre-Trial Motion" seeking to suppress (1) statements of Appellant and (2) photographic identification. A Suppression Hearing was held on Appellant's Motion on January 9, 2015 and March 13, 2015. On July 21, 2015, the Court denied Appellant's Motion to Suppress photographic identification and issued Findings of Fact and Conclusions of Law. On July 28, 2015, the Court denied Appellant's Motion to Suppress statements of Appellant and again issued Findings of Fact and Conclusions of Law. On June 1, 2015, Appellant filed a "Notice of Alibi Defense."

On August 5, 2015, Appellant was convicted after a two-day Jury Trial of Murder in the First Degree[12], Recklessly Endangering Another Person[13], Possession of an Instrument of Crime[14], and Persons Not to Possess a Firearm.[15] Prior to sentencing, the Court ordered a Pre-Sentence Investigation Report and Drug and Alcohol Evaluation. On September 11, 2015, Appellant was sentenced as follows: Count 1, Murder in the First Degree, life imprisonment without the possibility of parole, no RRRI eligibility, provide a DNA simple; Count 3,

---

[8] 18 Pa.C.S. § 2502
[9] 18 Pa.C.S. § 2705
[10] 18 Pa.C.S. § 907
[11] 18 Pa.C.S. § 6105
[12] 18 Pa.C.S. § 2502
[13] 18 Pa.C.S. § 2705
[14] 18 Pa.C.S. § 907
[15] 18 Pa.C.S. § 6105

8

Recklessly Endangering Another Person, one to two years SCI consecutive to Count 2; Count 6, Possession of a Firearm Prohibited, five (5) to ten (10) years consecutive to Count 3; and Count 4, Possession of an Instrument of Crime, one to two years consecutive to Count 1 but concurrent to Counts 3 and 6 for an aggregate sentence of life without parole plus 6 to 12, no RRRI, provide a DNA sample, and restitution. (N.T. 9/11/15 pp.18-19)[16].

On case 5705-2014, the court sentenced the Appellant: Count 1, Persons not to Possess, 5 to 10 years SCI; Count 3, Possession of a Firearm with an Altered or Obliterated Manufacturer's Number, 5 to 10 years concurrent to Count 1; Count 7, Possession of a Controlled Substance, 1 to 3 years concurrent to Counts 1 and 3. The aggregate sentence is 5 to 10 years SCI, no RRRI eligibility, provide a DNA sample and that sentence runs concurrent to 5326-2014. (N.T. 9/11/15 p.19).

On October 8, 2015, Appellant filed a timely Notice of Appeal.[17] On October 9, 2015, the Court directed Appellant to file a "Concise Statement of Matters Complained of on Appeal". On October 29, 2015, Appellant filed a "Concise Statement of Matters Complained of on Appeal." Appellant raises the following issues for appellate review:

1. Was the evidence presented at the time of Trial sufficient to convict Appellant of the charges of First Degree Murder, Recklessly Endangering Another Person, Possessing an Instrument of Crime, and Person Not to Possess a Firearm?

2. Was the Trial Court in error in denying Appellant's Pretrial Motion as to suppression of statements given by Appellant to law enforcement authorities?

---

[16] In the course of preparing this Opinion, the court found a clerical error in the Judgment of Sentence and it was corrected. Count 4 mistakenly noted a sentence of 1 to 5 years when it should have been a sentence of 1 to 2 years. This change to the sentencing order decreased the Appellant's original sentence. *Commonwealth v. Borrin*, 12 A.3d 466 (2011).

[17] The Appellant filed a "Motion to Consolidate" in the Superior Court and the Motion was granted on November 23, 2015. Therefore, Common Pleas Dockets are consolidated for purposes of appeal: Nos. 23-CR-5326-2014 and 5705-2014. They are consolidated from 2 separate Superior Court docket numbers: Nos. 3051 EDA 2015, 3053 EDA 2015 to the sole docket number: No. 3051 EDA 2015.

## DISCUSSION:

**I.**       **Appellant argues that the evidence presented at the time of Trial was insufficient to convict Appellant of the charges of First Degree Murder, Recklessly Endangering Another Person, Possession of an Instrument of Crime, and Person Not to Possess a Firearm.**

The first issue raised by Appellant for appellate review presents a challenge to the sufficiency of the evidence. Specifically, he argues that the evidence is insufficient to support his convictions for First Degree Murder, Recklessly Endangering Another Person, Possession of an Instrument of Crime, and Person Not to Possess a Firearm.

### A. Standards governing sufficiency of the evidence

A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Strouse*, 2006 Pa. Super. 273, 909 A.2d 368 (2006); *Commonwealth v. Dale,* 2003 Pa. Super. 413, 836 A.2d 150 (2003). When reviewing a challenge to the sufficiency of the evidence to support a conviction, the court must determine whether the evidence was sufficient to enable the trier of fact to find every material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth, as the verdict winner. *Commonwealth v. Strouse*, *supra*; *Commonwealth v. Dale, supra.* (*See also Commonwealth v. McCloskey,* 2003 Pa. Super. 409, 835 A.2d 801 (2003); *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000).

Furthermore, the Commonwealth may sustain its burden by proving the elements of the offense with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give evidence produced, is free to believe all, part, or none of the evidence. *Commonwealth v. Jette*, 818 A.2d 533, 534 (Pa. Super 2003).

The Superior Court may not substitute its judgment for that of the finder of fact. *Commonwealth v. Hopkins,* 747 A.2d 910 (Pa. Super. 2000). If the fact finder reasonably could

10

have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed to support the verdict. *Commonwealth v. Wood*, 432 Pa. Super. 183, 637 A.2d 1335 (1994). The standard applies equally to cases in which the evidence is circumstantial, rather than direct, as long as the evidence as a whole links the accused to the crime charged beyond a reasonable doubt. *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988); *Commonwealth v. Swerdlow,* 431 Pa. Super. 453, 636 A.2d 1173 (1994).

Additionally, mere conflicts in the testimony of the witnesses do not render the evidence insufficient. *Commonwealth v. Moore*, 436 Pa. Super. 495, 648 A.2d 331 (1994). Issues of credibility are left to the finder of fact, who is free to accept all, part, or none of a witness's testimony. *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97 (1995); *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548 (1992); *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995); *Commonwealth v. Kelley,* 444 Pa. Super. 377, 664 A.2d 123 (1995); *Commonwealth v. Lytle,* 444 Pa. Super. 126, 663 A.2d 707 (1995). Questions of doubt are for the finder of fact, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the totality of the circumstances. *Commonwealth v. Cassidy*, 447 Pa. Super. 192, 668 A.2d 1143 (1995); *Commonwealth v. Govens,* 429 Pa. Super. 464, 488, 632 A.2d 1316 (1993), *alloc*. den., 539 Pa. 675, 652 A.2d 1321 (1994). Only when the evidence offered to support the verdict is in contradiction to the physical facts, or in contravention to human experience and the laws of nature, can the evidence be considered insufficient as a matter of law. *Commonwealth v. Widmer, supra.*

The appellate courts in Pennsylvania have articulated a well-settled test for reviewing sufficiency of the evidence claims:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most

11

favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Baker*, 72 A.3d 652, 657-58 (Pa. Super. 2013) *appeal denied*, 86 A.3d 231 (Pa. 2014) (quoting *Commonwealth v. Knox,* 50 A.3d 749, 754 (Pa. Super. 2012), *appeal granted on other grounds,* 68 A.3d 323 (Pa. 2013)). Furthermore, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis added).

In this case, the Commonwealth was able to present ample evidence, far in excess of the necessary burden enumerated above. Therefore, the Judgment of Sentence as to First Degree Murder, Recklessly Endangering Another Person, Possessing an Instrument of Crime, and Person Not to Possess a Firearm should be upheld.

### 1. The evidence was sufficient to prove the elements of First Degree Murder beyond a reasonable doubt.

First Degree Murder is defined as "an intentional killing." 18 Pa.C.S.§ 2502(a). The Crimes Code further defines an "intentional killing" as a "[k]illing by means of poison, or by

12

lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.§ 2502(d). In order to convict an individual of first degree murder, the Commonwealth has the burden of proving the following elements beyond a reasonable doubt at trial: (1) a human being was unlawfully killed; (2) the accused is responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. *Commonwealth v. Reed*, 990 A.2d 1158, 1161 (Pa. 2010). With regard to the third element, the Commonwealth may establish specific intent to kill through wholly circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body. *See Commonwealth v. Smith*, 604 Pa. 126, 142 (2009); *Commonwealth v. Watkins*, 577 Pa. 194, 209 (2003). Similarly, malice may also be inferred from the use of a deadly weapon on a vital part of the victim's body, such as the chest. *See Commonwealth v. Briggs*, 12 A.3d 291, 306 (Pa. 2011) (finding the chest and abdomen to be vital areas of the body such that the convictions for two counts of first degree murder could be upheld); *Commonwealth v. Rawles*, 501 Pa. 514, 522, 462 A.2d 619, 623 (1983) (finding specific intent to kill when the victim was fatally stabbed in the chest). According to the Crimes Code, any loaded or unloaded firearm, *inter alia*, constitutes a "deadly weapon." 18 Pa.C.S.§ 2301.

Construed in the light most favorable to the Commonwealth, the evidence clearly supports Appellant's First Degree Murder conviction. Specifically, the evidence showed that Appellant pulled out a loaded silver revolver from his waist and ran around to the front of the car where, despite Womack telling him to chill, Appellant brought the gun up chest-high or shoulder –high and held it there for approximately three seconds, aiming it at Swain, before he ultimately fired at Swain. As Womack testified, Appellant "took aim and shot him." (N.T. 8/5/2015 p. 65). The bullet penetrated the windshield and struck Swain in the chest. According to Dr. Hellman, it was Appellant's bullet to the chest that killed Swain within eight minutes. Therefore, the fact

13

that Appellant used a revolver—a deadly weapon—to shoot Swain in the chest—a vital portion of his body—and kill him clearly satisfies the elements of this crime. As a result, there was sufficient evidence to support the First Degree Murder conviction.

### 2. The evidence was sufficient to prove the elements of Recklessly Endangering Another Person beyond a reasonable doubt.

A person commits the crime of Recklessly Endangering Another Person if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.§ 2705. "'The mens rea required for this crime is a conscious disregard of a known risk of death or great bodily harm to another person.'" *Commonwealth v. Peer*, 684 A.2d 1077, 1080 (Pa.Super. 1996) (quoting *Commonwealth v. Cottam*, 616 A.2d 988, 1004 (Pa.Super 1992)). To sustain a conviction under this statute, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. *In re Maloney*, 636 A.2d 671, 674 (Pa.Super. 1994). Additionally, "'[d]anger, not merely the apprehension of danger, must be created.'" *Id.* (quoting *Commonwealth v. Trowbridge*, 395 A.2d 1337, 1340 (Pa.Super. 1978)). Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death. *Commonwealth v. Hopkins*, 747 A.2d 910, 916 (Pa.Super. 2000); *see also Commonwealth v. Hartzell*, 988 A.2d 141, 144 (Pa.Super. 2009) (holding that discharging a weapon multiple times in the vicinity of others constitutes a sufficient danger to satisfy the statute).

Construed in the light most favorable to the Commonwealth, the evidence clearly supports Appellant's Recklessly Endangering Another Person conviction. The evidence shows that Appellant pulled a loaded revolver out of his waist and ran to the front of the vehicle. Inside

14

the vehicle, Jabri Green was sitting in the front driver's seat and Swain was sitting in the front passenger's seat. Appellant took aim and fired into the vehicle. Although the bullet directly struck and killed Swain, Green suffered an injury to his right thigh as a result of Appellant firing the gun into the vehicle. (N.T. 8/5/2015 pp. 50-67).

By firing a gun into the vehicle occupied by Swain and Green in the front seats, Appellant showed that he had the present ability to inflict great bodily harm or death and certainly acted with conscious disregard for Green's safety. Although Appellant was not aiming at Green, the loaded revolver was pointed in his general direction. Furthermore, because the bullet first went through the windshield, it is conceivable that it could have been deflected after going through the windshield and struck Green. Additionally, with the force of the bullet coming through the windshield, it is not impossible to think that a fragment of windshield glass or shrapnel could have struck Green in a vital portion of his body. Green testified that his leg started bleeding from "a gunshot wound" and he was treated at Crozer Chester Hospital for the injury. (N.T. 8/5/15 p.205, p.217). As a result, there was sufficient evidence to support the Recklessly Endangering Another Person conviction.

### 3. The evidence was sufficient to prove the elements of Possession of an Instrument of Crime beyond a reasonable doubt.

A person commits the crime of Possession of an Instrument of Crime if he possesses any instrument of crime with intent to employ it criminally. 18 Pa.C.S.§ 907(a). An "instrument of crime" is defined as any of the following: (1) Anything specially made or specially adapted for criminal use; (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have. *Id.* § 907(d).

Construed in the light most favorable to the Commonwealth, the evidence clearly supports Appellant's Possession of an Instrument of Crime conviction. The evidence clearly

15

demonstrates that Appellant possessed a loaded silver revolver that he had pulled from his waist. The evidence also supports the fact that Appellant had the intent to employ the loaded revolver criminally. The evidence demonstrates that Appellant was trying to determine if Swain had "a beef" with him, with little success. Appellant ultimately pulled out his loaded revolver from his waist, ran around to the front of the vehicle so that he was in front of Swain, aimed it at Swain for three seconds and then shot at Swain through the vehicle. The credible, unrebutted testimony from eye-witness Donald Womack was: "Breon pulled out the gun, a silver gun from his waist and he ran around the front of the car and he take aim and shot." (N.T. 8/5/2015 p. 63). This course of action certainly shows that by pulling the loaded revolver out, aiming it at Swain, and ultimately firing it at Swain, Appellant-Breon Lawrence's intent was to kill Swain. As a result, there was sufficient evidence to support the Possession of an Instrument of Crime conviction.

### 4. The evidence was sufficient to prove the elements of Person Not to Possess a Firearm beyond a reasonable doubt.

With regard to the crime of "Person Not to Possess a Firearm", Section 6105 of the Crimes Code provides:

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.§ 6105(a)(1). Relevant to this case is § 6105(c) which references "Other persons" who are subject to the prohibition of possessing a firearm. *Id.* § 6105(c). Specifically, subsection (c)(2) provides:

> A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

16

*Id.* § 6105(c)(2).

Construed in the light most favorable to the Commonwealth, the evidence clearly supports Appellant's 'Person Not to Possess a Firearm' conviction. As mentioned above, the evidence at the Jury Trial proved that Appellant possessed a loaded revolver and used it to kill Swain.

Additionally, the Stipulation that was entered at the Non-Jury Trial established that on November 5, 2012, under Delaware County Court of Common Pleas docket number 3766-2012, Appellant was convicted of an offense under The Controlled Substance, Drug, Device and Cosmetic Act—Possession with Intent to Deliver a Controlled Substance, Cocaine, a Schedule II drug—as required by the statute. (N.T. 8/6/15 pp. 241-244). As a result, there was sufficient evidence to support the Person Not to Possess a Firearm conviction.

**II.      Appellant argues that the Trial Court erred in denying his pretrial Motion to Suppress statements given by Appellant to law enforcement authorities.**

The second issue raised for appellate review presents a challenge to the Order denying Appellant's Motion to Suppress. The court did not err in denying Appellant's Motion to Suppress Evidence for the reasons provided in the Findings of Fact and Conclusions of Law issued July 28, 2015, a copy of which is attached hereto, and incorporated by reference, as Exhibit "A".

## CONCLUSION:

The evidence presented at trial was sufficient to convict Appellant of the charges of First Degree Murder, Recklessly Endangering Another Person, Possession of an Instrument of Crime, and Persons Not to Possess a Firearm. Further, the Court properly denied Appellant's pretrial Motion to Suppress and therefore, the Judgment of Sentence should be affirmed on appeal.

BY THE COURT:

JAMES F. NILON, JR., J.

18

# EXHIBIT

# "A"

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA   | CP-23-CR-5326-14

v.                              | CP-23-CR-5705-14

BREON LAWRENCE

Christopher DiRosato, Esquire; Assistant District Attorney for the Commonwealth
Scott Galloway, Esquire; Attorney for the Defendant

## ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS STATEMENTS OF DEFENDNANT"

AND NOW, this 28th day of July 2015, upon consideration of the Defendant's "Motion to Suppress Statements of Defendant"[1], and the Hearings held on January 9, 2015 and March 15 2015, it is hereby ORDERED AND DECREED that said Motion is **DENIED.** The Court issues the following:

### A. Findings of Fact:

1. On April 11, 2014, at approximately 2:36 p.m., the Chester Police Departmen responded to a radio call to the Crozer Chester Medical Center for a report of a shooting victim. The Victim, Jahkil Swain, was pronounced dead at Crozer Medica Center when Officers arrived. A post-mortem examination that was conducted on April 15, 2014 by Dr. Frederic Hellman, the Chief Medical Examiner of Delaware County, determined that the cause of death was a single gunshot wound to the torso and ruled the manner of death a homicide. The incident itself took place on Crosby Street, in the City of Chester, Delaware County, Pennsylvania. Eye-witnesses allege

---

[1] Section II of Defendant's Omnibus Motion. (Sections I and III have already been addressed by the court).

1

that the Defendant approached the driver's side door where the victim was seated and fired once at the victim.

2. Detective Adam Sendek, a law enforcement officer for approximately 45 years with the City of Chester Police Department, and now with the Delaware County Criminal Investigation Division, was assigned to investigate this case along with Detective James Nolan from the Chester Police Department. Det. Sendek was a detective in narcotics for 12 years, and has been assigned to the homicide unit for 2 years. (N.T. 1/9/2015 pp. 6-7). Det. Sendek testified at the January 9, 2015 Hearing that he conducted witness interviews which led him to develop the Defendant as a suspect. (N.T. 1/9/2015 pp. 8-9). Det. Sendek subsequently issued an arrest warrant for the Defendant. The Defendant was taken into custody by the U.S. Marshalls in Upland Borough on April 29, 2014, at approximately 4:00 p.m. (N.T. 1/9/2015 pp. 9-10). After he was arrested, the Defendant was brought to the Chester Police Department Headquarters. Also on April 29, 2014, a silver revolver was recovered from the Defendant's residence, which matched the description given by the witnesses of the handgun used in the homicide. (N.T. 1/9/2015 pp. 10-11).

3. On April 29, 2014, at 6:20 p.m. Detective Sendek and Detective Randy Bothwell interviewed the Defendant. Det. Sendek informed the Defendant that he was under arrest for the murder of Jahkil Swain. (N.T. 1/9/2015 pp. 11-12). Det. Sendek read the Defendant his *Miranda* rights and had the Defendant sign and initial each paragraph of the Waiver of *Miranda* Rights Form used by the Chester Police

2

Department[2]. Det. Sendek read the Form paragraph by paragraph to the Defendant. Defendant did not request an attorney, nor to remain silent, and did not have any questions regarding the rights he was waiving. (N.T. 1/9/2015 pp. 12-14).

4. Based on Det. Sendek's experience in law enforcement, the Defendant did not appear to be under the influence of alcohol or a controlled substance. (N.T. 1/9/2015 pp. 17-19). The Defendant did not appear to exhibit any indication of mental illness or mental defect. (N.T. 1/9/2015 pp. 19-20). Det. Sendek testified that the Defendant was not threatened in any manner or promised anything in return for his statement. (N.T. 1/9/2015 p. 20). Det. Sendek and Det. Boswell spoke with the Defendant for twenty to thirty minutes prior to recording any statement. (N.T. 1/9/2015 pp. 20-21). No threats or promises were issued during the unrecorded portion of the interview. The Detectives asked the Defendant for his permission to record the interview and showed him the digital recorder, to which the Defendant agreed and recording began. (N.T. 1/9/2015 p. 21). The recording lasted for approximately 30 minutes. (N.T. 1/9/2015 p. 23). Defendant never admitted involvement in the murderer during any part of the interview. The recording was admitted into evidence as CS-2, without objection, at the Suppression Hearing on January 9, 2015. (N.T. 1/9/2015 pp. 22-23).

## B. **CONCLUSIONS OF LAW:**

### I. **Motion to Suppress Statements**

1. The United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966) prohibited the use of inculpatory statements obtained in violation of the Fifth

---

[2] The Waiver of Rights Form was admitted into evidence without objection as Exhibit CS-1. (N.T. 1/9/15 p. 36).

3

Amendment to the United States Constitution. The Court in *Miranda* mandated that prior to custodial interrogation, a suspect must be advised that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to presence of counsel, and that if he cannot afford counsel one will be appointed to him. *Miranda*, 384 U.S. at 444-45.

2. The Fifth Amendment right to counsel and the rights guaranteed by *Miranda* are only triggered when a person is undergoing actual custodial interrogation. *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980). Statements which result from a custodial interrogation by law enforcement officers cannot be admitted against the defendant in a criminal proceeding, unless that defendant has been advised of his right against self-incrimination and his right to counsel. See, *In the Interest of Mellot*, 476 A.2d 11 (Pa. Super. 1984) (citing *Miranda v. Arizona*, 384 U.S. 463, 478-479, 86 S. Ct. 1602, 1612 (1966)). Here, the Commonwealth asserts that the Defendant waived his *Miranda* rights and gave a voluntary statement. Defendant did so by signing and initialing each section of the Waiver of *Miranda* Rights Form, after they were verbally read to him, section by section, by Detective Sendek. (N.T. 1/9/2015 pp. 14-16).

### Waiver-must be made knowingly, intelligently and voluntarily:

3. In Pennsylvania, the Commonwealth has the burden of proving a knowing, intelligent, and voluntary waiver of *Miranda* rights. *Commonwealth v. Fletcher*, 750 A.2d 261, 268 (Pa. 2000). "In order to do so, the Commonwealth must establish that the proper warnings were given and that the accused manifested an understanding of

4

these warnings." Id. The Commonwealth must prove by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Smith*, 784 A.2d 182,186 (Pa. Super. 2001) (*citing Commonwealth v. James*, 486 A.2d 376 (Pa. 1985)).

4. The requirements of due process are satisfied and the protection against the use of involuntary confessions, which law and reason demand, are met by application of the "totality of the circumstances" analysis to all questions involving the waiver of rights and the voluntariness of confessions. *Commonwealth v. Garcia,* 847 A.2d 67 (Pa. Super. 2004), judgment aff'd, 888 A.2d 633 (Pa. 2005).

5. The "totality of the circumstances" analysis includes all of the attending facts and circumstances which must be considered and weighed in determining whether a confession was knowingly and freely given. *In the Interest of T.B.,* 11 A.3d 500 (Pa. Super. 2010); *Commonwealth v. Harvey*, 812 A.2d 1190, (Pa. 2002); *Commonwealth v. Williams*, 475 A.2d 1283 (Pa. 1984).

6. In making a voluntariness determination, the court examines the following factors: "(1) the duration and means of interrogation; (2) the defendant's physical and psychological state; (3) the conditions of detention; (4) the attitude of the interrogator; (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion." *Commonwealth v. Harvey*, 571 Pa. 533, 812 A.2d 1190 (2002). The giving of *Miranda* warnings is an important factor in determining voluntariness. As the Pennsylvania Supreme Court noted in *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959 (2002):

5

> The fact that warnings are given is an important factor tending in the direction of a voluntariness finding. This fact is important in two respects. It bears on the coerciveness of the circumstances, for it reveals that the police were aware of the suspect's rights and presumably prepared to honor them…it bears on the defendant's susceptibility, for it shows that the defendant was aware that he had a right not to talk to the police.

*Templin*, 568 Pa. at 318, 795 A.2d at 966.

In the case *sub judice*, the Defendant's waiver of his *Miranda* rights was voluntary. Defendant was interrogated in an interview room at the Chester City Police Department Headquarters. (N.T. 1/9/2015 pp. 10-12). Only Detective Sendek, Detective Randy Bothwell and the Defendant were present in the room during the interrogation. (N.T. 1/9/2015 p. 12). The room was described by Det. Sendek as: "one table, four chairs, blank walls, one window, very spartan". (N.T. 1/9/2015 p. 12). The duration of the interrogation lasted approximately 55 minutes, 20 minutes of which was off the record, and 25 minutes of which was recorded. (N.T. 1/9/2015 pp. 20, 34).

The interview started with a 20-30 minute unrecorded interview. During the unrecorded portion of the interview, the Detectives did not promise anything to the Defendant in return for a statement:

> Q. And there was nothing discussed about Mr. Lawrence's giving his statement in reference to what might happen down the road in reference to his case?
> A. No, Sir.
> Q. Nothing like that was said?
> A. No deal was – there was no offer of anything, sir.
> Q. Well, I don't think my question was about an offer. Was there any discussions about…
> A. None.
> Q. …what sentence he may expect if he talked as opposed to not talking?
> A. No, sir.

6

(N.T. 1/9/2015 pp. 31-32).  Only "minimal questions" were asked of the Defendant while they were "off the record."  (N.T. 1/9/2015 p. 32).  After the "off the record" portion of the interview was complete, the Defendant was fully aware that he was then put on the record and being recorded, as he gave Detective Sendek permission to record the interview.  (N.T. 1/9/2015 p. 21).  Detective Sendek also pulled out his digital recorder and showed it to the Defendant.  (N.T. 1/9/2015 p. 21). The Defendant's psychological state was observed by the Detective as being "very cooperative," and the Defendant did not have any questions related to the waiver of his *Miranda* rights.  (N.T. 1/9/2015 p. 21).

The Defendant was not threatened with any physical harm if he did not provide a statement.  (N.T. 1/9/2015 p. 19).  Defendant was also not promised anything in return for providing a statement, including no promises regarding the criminal charges he may be facing, or the outcome of his case. (N.T. 1/9/2015 p. 19).

*Miranda* requires that any decision to waive the right against self-incrimination be made knowingly and intelligently. *Commonwealth v. Fletcher,* 750 A.2d 261, 268 (Pa. 2000). "The requirement of a knowing and intelligent waiver of rights means that the suspect must have cognitive faculties for understanding the meaning and effect of statements he may give. In determining whether there has been an intelligent waiver, various factors, which were often considered in pre-*Miranda* confession cases under the 'totality of circumstances' test, are extremely relevant. Among these factors are the age of the accused, his mental capacity, and the presence or absence of prior contact with the police." 42 Am Jur POF 2d 617.

7

Here, the Defendant was 21 years-old on the date the Police Criminal Complaint was filed. His mental capacity was described by Detective Sendek, as follows:

> Q. Was Mr. Lawrence, did he appear to be mentally deficient or mentally ill while you interacted with him?
> A. No, sir.
> Q. Did he ever inappropriately respond to your question or act inappropriately to question his mental capabilities?
> A. Not at any time. No, sir.
> Q. Did Mr. Lawrence represent to you that he was suffering from any psychiatric or psychological illness?
> A. He did not.

(N.T. 1/9/2015 pp.19-20). He was described by Detective Sendek as understanding the situation. There was nothing about the Defendant's demeanor that caused the Detective concern. Detective Sendek had interacted many times over his 45 years in law enforcement with people who suffered from mental defects such as mental retardation and mental illness. (N.T. 1/9/2015 pp. 19-20). The Defendant appeared to have the mental capacity to execute the Waiver of *Miranda* Rights form.

Defendant also did not appear to be under the influence of any drugs or alcohol when he signed the waiver form. Detective Sendek testified to interviewing persons under the influence of controlled substances "many times" in his 45 years in law enforcement. (N.T. 1/9/2015 pp. 17-18). He also indicated that he had specific experience interviewing persons under the influence of heroin. He indicated that usually people under the influence of heroin are "laid back, easy going, matter-of-fact, woozy." (N.T. 1/9/2015 p. 17). Also, "they're not wired at all, lethargic would be the more appropriate word." (N.T. 1/9/2015 p. 18). Detective Sendek testified the Defendant was not exhibiting any of the signs associated with being under the influence of heroin. (N.T. 1/9/2015 p. 18).

8

Detective Sendek also testified as to the Defendant not appearing to be under the influence of alcohol:

> Q. Was Mr. - - have you encountered individuals under the influence of alcohol in your 45 years of a police officer?
> A. Absolutely.
> Q. Did - - what signs do you normally look for to determine whether someone's under the influence of alcohol?
> A. Again, sir, either an angry drunk or a happy drunk, he didn't exhibit either of those signs.
> Q. Did you smell any alcohol coming from his person?
> A. I did not, sir.
> Q. Did his eyes appear to be bloodshot?
> A. No, sir.
> Q. Speech slurred in any form or fashion?
> A. No, sir.
> Q. Was Mr. Lawrence - - did Mr. Lawrence appear to be under the influence of alcohol?
> A. No.

(N.T. 1/9/2015 p. 18). Defendant did not appear to be under the influence of any controlled substances or alcohol at the time he signed the Waiver of *Miranda* Rights Form.

The *Miranda* decision recognizes that a suspect may waive his rights under the privilege against self-incrimination, so long as the waiver is made (1) voluntarily, (2) knowingly, and (3) intelligently. In the case *sub judice*, examining the totality of the circumstances the Defendant voluntarily waived his *Miranda* rights. He exhibited no signs of mental illness or defect when responding to the Detective's questions. There was no evidence of physical mistreatment and there was testimony that the Defendant was relaxed and cooperative. (N.T. 1/9/2015 p. 21). The conditions of the interview were not coercive. There was no evidence of the use of fear or trickery by the interrogators.

The Defendant made a knowing and intelligent waiver of his rights. He had the cognitive faculties for understanding the meaning and effect of statements he gave. He gave an intelligent

9

waiver. Based on the credible, unrebutted testimony of Detective Sendek, the Defendant had the age and mental capacity (N.T. 1/9/2015 pp. 20, 25) to give a sufficient waiver of his *Miranda* rights.

### There is Affirmative Evidence of Waiver-the Defendant executed a written waiver of his Miranda rights.

Here, the Defendant expressly waived his *Miranda* rights by signing the Advice of Rights Form (CS-1)[3] which is strong evidence that the Defendant knowingly, intelligently and voluntarily waived his rights. See *North Carolina v. Butler*, 441 U.S at 373 ("An express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver."). Defendant was advised that in order for the Detectives to interview the Defendant, he would have to sign a form waiving his *Miranda* rights. Detective Sendek read each individual right to the Defendant, who then signed and initialed each right as it was read to him. Defendant at no time indicated that he did not wish to answer any of these questions or to remain silent. (N.T. 1/9/2015 p. 17). Defendant did not ask any questions in regards to his waiver of rights and was fully cooperative. (N.T. 1/9/2015 p. 21) Defendant knowingly, intelligently and voluntarily waived his *Miranda* rights contained in the form.

### CONCLUSION:

On April 11, 2014 Detective Adam Sendek advised Breon Lawrence of his *Miranda* rights by providing him with a written Form containing each *Miranda* right. Detective Sendek read aloud the first right on the form, passed the form to Breon Lawrence to sign, then read the next right, and repeated until all rights were read and signed by Breon Lawrence. At that time the Defendant waived each of his *Miranda* rights. At no time did Breon Lawrence ask Detective

---

[3] The Waiver of Rights Form was admitted into evidence without objection as Exhibit CS-1. (N.T. 1/9/15 p. 36).

10

Sendek any questions regarding his *Miranda* rights, nor did he express any confusion as to anything that was explained to him. Detective Sendek witnessed Breon Lawrence sign the Waiver of *Miranda* Rights Form, indicating he had read his *Miranda* rights and understood them. By signing the Form, the Defendant indicated that he was willing to answer questions without an attorney present. Breon Lawrence explicitly waived his *Miranda* rights. This waiver was knowingly and intelligently made. Detective Sendek and Detective Bothwell never threatened or promised anything to Breon Lawrence in connection with providing his statements. Breon Lawrence provided voluntary statements.

Consequently, this Court ultimately finds that there was no unlawful action of law enforcement in violation of the Defendant's rights under the 4th and 14th Amendments to the United States Constitution, or under Article I, Section 8 of the Pennsylvania Constitution. The Court finds that based on the totality of the circumstances, the Defendant made a knowing, intelligent and voluntary waiver of his *Miranda* rights and his statements are admissible at trial.

WHEREFORE, Defendant's Omnibus Pre-Trial Motion is **DENIED**. Any and all of the Defendant's statements made on April 29, 2014 are admissible at Trial in this matter.

A Trial in the above-captioned matter is scheduled for **August 3, 2015 at 9:00 A.M. in Courtroom 2.**

**BY THE COURT:**



**JAMES F. NILON, JR., J.**

11